UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALINDA QUIRIN,
        Plaintiff,

-v-

ABBOTT LABORATORIES,
        Defendant.

No. 1:08-cv-011

HONORABLE PAUL L. MALONEY

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on a Defendant Abbott Laboratories's motion (Dkt. No. 32) for summary judgment. Plaintiff Quirin filed a response. (Dkt. No. 35.) Defendant filed a reply. (Dkt. No. 38.) Having read the motion, briefs, supporting documents, and relevant legal authority, no oral argument is required to resolve the issues presented. *See* W.D. MICH. L.CIV.R. 7.2(d).

I. BACKGROUND

Plaintiff Malinda Quirin began working for Defendant Abbott Laboratories in April, 1993. (Compl. ¶ 7.) Plaintiff was terminated in 2006. (Compl. ¶ 17.) At the time of her termination, Plaintiff was working as a liquid packaging operator. (Quirin Deposition at 33.) In 2005, Plaintiff had portions of her spine fused because of continuing back problems. (*Id.* at 160.) After the fusion, in December 2005, Plaintiff's doctor placed a temporary restriction prohibiting Plaintiff from lifting more than 30 pounds. (*Id.* at 44-45.) On March 31, 2006 Plaintiff's doctor made the lifting restriction permanent. (Compl. ¶ 9; Quirin Deposition at 42-43; Plaintiff's Exhibit 1.)

A liquid packaging operator trainee is generally responsible for operating and maintaining machines that fill 8 ounce packages or bottles. (Defendant's Exhibit 3; Quirin Deposition at 38.)

Liquid packaging operators rotate among five pieces of equipment: labeler, hi-cone, thiele, tray wrap and filler. (Nielson-Trine Affidavit ¶ 9; Defendant's Exhibit 2.) In addition to rotating between the machines, the liquid package operators would rotate to a relief station. (Nielson-Trine Affidavit ¶ 14; Mingus Deposition at 30.) The individuals in the relief positions would relieve operators whenever an operator needed to be away from the machine. (Nielson-Trine Affidavit ¶ 14; Quirin Deposition at 86.) Defendant's job description for a liquid packaging operator states the individual must lift more than 60 pounds as approximately 20% of the job's responsibilities. (Defendant's Exhibit 3.) Several of the machines required the operator to lift more than 30 pounds. Specifically, the labeler machine needed to be filled with glue approximately once a shift and the glue box weighed 52 pounds. (Quirin Deposition at 36; Nielson-Trine Affidavit ¶11; Defendant's Exhibit 2; Plaintiff's Exhibit 2.) The glue for the thiele machine came in 50 pound bags and required the operator to carry the glue bag up approximately four steps. (Quirin Deposition at 37; Nielson-Trine Affidavit ¶11; Defendant's Exhibit 2; Plaintiff's Exhibit 2.) The glue for the tray wrap machine weighed 36.8 pounds and the operator needed to climb two stairs to refill the machine with the glue.. (Quirin Deposition at 37; Nielson-Trine Affidavit ¶11; Defendant's Exhibit 2; Plaintiff's Exhibit 2.) The hi-cone machine required the operator to load spools of plastic weighing 37 pounds  (Quirin Deposition at 78; Nielson-Trine Affidavit ¶11; Defendant's Exhibit 2; Plaintiff's Exhibit 2.) Lifting was considered part of the operator's job. (Quirin Deposition at 50-51; Nielson-Trine Affidavit ¶ 13.)

Defendant sought to accommodate Plaintiff in December 2005 after her temporary restriction on lifting was in place. Defendant asserts it had Plaintiff's co-workers perform all of Plaintiff's lifting. (Nielson-Trine Deposition at 131.) Plaintiff asserts no one told her co-workers to do her

lifting, she simply asked them to do it when necessary. (Quirin Deposition at 46-47.) Plaintiff concedes Defendant worked with her to find a way to accommodate her lifting restriction. (*Id.* at 60.) After Plaintiff's restriction became permanent, she met with several members of the Human Resources Department about her job. (Quirin Deposition at 59-65.) On May 25, 2006, Defendant informed Plaintiff it could not accommodate her permanent restriction. (Nielson-Thine Deposition at 129.) As a result, Plaintiff was on a leave of absence from May 25, 2006 until August 25, 2006. (Nielson-Thine Affidavit ¶ 22.) Plaintiff was separated from Defendant on August 25, 2006. (Defendant's Exhibit 54.)

II. LEGAL FRAMEWORK

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 574. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

III.  ANALYSIS OF PLAINTIFF'S CLAIMS

The Americans with Disabilities Act (ADA), prohibits covered entities from discriminating against qualified individuals with a disability because of the disability with regard to various terms, conditions and privileges of employment.  42 U.S.C. § 12112(a); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104-1105 (6th Cir. 2008).  To establish a claim of discrimination under the ADA, a plaintiff must show (1) she is disabled, (2) she is qualified for the job with or without reasonable accommodation, and (3) she was discriminated against solely by reason of her disability.[1] *Id.* at 1105 (citing *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007); *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002); *Monette v. Elec. Data Sys Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).  A plaintiff using circumstantial, rather than direct, evidence to establish a prima facie case of discrimination must follow the *McDonnell-Douglas* burden shifting scheme.  *Talley*, 542 F.3d at 1105.

Although language differences exist between the ADA and Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), M.C.L. § 37.1201 *et seq.*, the PWDCRA substantially mirrors the ADA and the two statutes essentially require the same analysis.  *Cotter*, 287 F.3d at 597 (citing *Cassidy v. Detroit Edison Co*., 138 F.3d 629, 634 n. 3 (6th Cir. 1998) and *Chiles v. Machine*

---

[1]In addition to this three element test, the Sixth Circuit Court of Appeals has also used a five element test.  *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (citing *Macy v. Hopkins County Sch. Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000) (holding a prima facie case requires a plaintiff to show (1) she is disabled, (2) she is otherwise qualified for her previous position, with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer knew or had reason to know of her disability, and (5) she was replaced or the position remained open while the employer looked for other applicants).  The parties both cite the three element test and the issues presented focus on the first two elements of both the three element and five element test.

*Shop, Inc.*, 606 N.W.2d 398, 405 (Mich. App. 1999)). *See Peden v. City of Detroit*, 680 N.W.2d 857, 870 (Mich. 2004) (noting, in most cases, the analysis under both statutes will be the same but cautioning courts not to assume that the PWDCRA analysis will necessarily parallel the ADA in every case). Defendant has asserted analysis of Plaintiff's claim is identical under both Acts. Plaintiff has not challenged that assertion. This Court finds no material difference in the analysis of Plaintiff's claims under the two statutes.

Plaintiff Quirin must establish she is a disabled individual within the meaning of the ADA as a threshold requirement for her claim. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 253 (6th Cir. 2000). The ADA defines the term "disability" as a physical or mental impairment substantially limiting one or more of the major life activities of the individual.[2] 42 U.S.C. § 12102(2); *Cotter*, 287 F.3d at 597. The Equal Employment Opportunity Commission's (EEOC) regulations implementing the ADA further define "major life activity" as "functions such as caring for oneself, performing manual tasks, walking, emotional or mental illness, learning and working." 29 C.F.R. § 1630.2(i); *Talley*, 542 F.3d at 1107. The regulations also define "substantially limits" as "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared" to an average person in the general population. 29 C.F.R.

---

[2]The ADA Amendment Act of 2008 amended Section 12102. The prior version of the ADA governs this action. Under the express language of the Amendment, the Act did not take effect until January 9, 2009. Pub. L. No. 110-325 § 8. Ordinarily, courts apply statutes in force when the allegedly offensive conduct occurred. *See Landgraf v. USI Films Prods.*, 511 U.S. 244, 249 (1994). The consensus of courts examining the Amendment have concluded it should not be given retroactive effect to conduct occurring prior to the Amendment's effective date. *See Young v. Precision Metal Prods., Inc.*, ___ F.Supp.2d ___, 2009 WL 507632 (W.D. Conn. Feb. 11, 2009) (citing one decision from the Seventh Circuit and six district court decisions). This Court concurs with that consensus.

§ 1630.2(j)(1); *Talley*, 542 F.3d at 1107.

Defendant argues Plaintiff cannot state a claim for disability discrimination because she cannot establish she is disabled under the ADA. Defendant questions whether Plaintiff can establish that either her ability to lift or work were substantially limited. Plaintiff argues she can establish both. Plaintiff further contends she can meet the first prong of her claim because Defendant regarded her as disabled.

    A.  Major Life Activity of Lifting

The parties disagree on whether lifting restrictions constitute a limitation on a major life activity. The parties also disagree when Plaintiff's back pain began to impact her major life activities. Defendant asserts Plaintiff's current physical limitations did not exist when she was terminated.[3]

The United States Supreme Court held, for major life activities other than working, an impairment that only moderately or intermittently prevents the individual from performing the activity does not constitute a substantial limitation under the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002) *superceded by statute* ADA Amendments Act of 2008, Pub. Law No. 110-325, 122 Stat. 3353 (interpreting the word "substantial" as "precluding impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities"). *See also Mahon v. Crowell*, 285 F.3d 585, 591 (6th Cir. 2002) (citing *Williams*). Most opinions discussing restrictions on lifting as a disability have done so in the context

---

[3]Plaintiff has had three surgeries performed on her back. (Quirin Deposition at 7-8, 160-161.) The first surgery occurred in 2004. Plaintiff had portions of her back fused in 2005, before she was terminated. After she was terminated, Plaintiff had a third surgery, another fusion, in December 2007.

of whether the restriction impacts an individual's ability to perform a job, and not in the context of lifting as a separate major life activity. *Smith v. Quikrete Cos., Inc.*, 204 F.Supp.2d 1003, 1008 n. 2 (W.D. Ky. 2002); *Marziale v. BP Prods. of North America*, No. 1:05-cv-741, 2007 WL 4224367 * 5 (S.D. Ohio Nov. 27, 2007). *See e.g., Burns*, 222 F.3d at 253-256. In the context of work, the Sixth Circuit has held that lifting restrictions, by themselves, do not constitute a disability. *Olds v. United Parcel Serv., Inc.*, 127 F.App'x 779, 782 (6th Cir. 2005) (per curiam) ("as the district court correctly concluded, the general rule in this Circuit is that a weight restriction alone is not considered a disability under the ADA"); *Law v. City of Scottsville*, No. 98-6335, 221 F.3d 1335, 2000 WL 799742 * 4 (6th Cir. 2000) (unpublished table opinion) (citing cases from four circuits, including the Sixth Circuit, for the proposition that "federal case law supports that a maximum weight restriction is not a disability as defined by the ADA"). At the same time, the Sixth Circuit has noted that the Equal Employment Opportunity Commission's (EEOC) Interpretive Guidelines state its list of major life activities, 29 C.R.R. § 1630.2(i), is not exhaustive and specifically identifies lifting as another major life activity. *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997) (citing 29 C.F.R. Pt. 1630 App. (1966)). *See also Wyson v. Dow Chem. Co.*, 503 F.3d 441, 450 (6th Cir. 2007) (same and citing 29 C.F.R. pt. 1630, App. § 1630.2(i)). The Sixth Circuit has not explained how a plaintiff might establish a disability from restriction on lifting. *Quikrete Cos., Inc.*, 204 F.Supp.2d at 1008.

Given other deficiencies in Plaintiff's case, this Court need not decide whether Plaintiff suffered any substantial limitation in a major life activity other than work. In addition to establishing her disability, a plaintiff must establish she was a qualified individual with a disability *at the time of the discriminatory act*. *Kocsis v. Multi-Care Mgt.*, *Inc.*, 97 F.3d 876, 884 (6th Cir.

7

1996) (emphasis in original). *See also Law*, 2000 WL 799742 * 5 ("The relevant time for determining whether the plaintiff is a 'qualified person with a disability' is at the time of the adverse employment decision," citing *Kocsis*). On August 6, 2007, one year after she was terminated, Plaintiff filled out a disability questionnaire. (Defendant's Exhibit 8.) Plaintiff signed the questionnaire below a paragraph stating that false statements to an insurance company may subject her to civil and criminal penalties. (*Id.* at 5.) Plaintiff's answers on the questionnaire indicate she suffered, at the time, no substantial limits on her daily activities. She stated she had no trouble with her daily sustenance or hygiene rituals, could perform regular household activities such as grocery shopping, house cleaning and laundry, had no trouble driving, could leave the house and do recreational activities, had no trouble sleeping, could walk, run and ride a bicycle, mowed the lawn and walked her dog. (*Id.* at 1-3.) At her deposition, taken on May, 21, 2008, Plaintiff stated the answers on her questionnaire were true at that time, but that as of the date of the deposition, she was unable to run, has trouble sleeping, and cannot ride a bicycle. (Quirin Deposition at 48-50.) The Court notes, in December 2007, Plaintiff had a third surgery on her back during which a second fusion was performed. (*Id.* at 7-8, 161.) This third surgery occurred after Plaintiff's termination and after she filled out the disability questionnaire, but before her deposition was taken.

Plaintiff never specifically addresses Defendant's contention that she had no substantial limits on a major life activity, other than working, when she was terminated. Plaintiff asserts "her lifting restriction limited her in 2005 and afterward in other ways. [She] cannot walk more than two blocks without pain in her back. She can't drive for more than an hour. She can't work in her yard, and she couldn't move furniture." (Plaintiff's Brief at 10.) Plaintiff relies on a portion of her deposition to attempt creation of a genuine issue of material fact on these matters. At her

deposition, Plaintiff stated, after her 2005 surgery, she could not walk for two blocks without pain (Quirin Deposition at 9 and 11), could not sit for more than half an hour without pain (*Id.* at 12), and could no longer work in her yard (*Id.* at 16). Plaintiff stated, since 2004, she has not been able to drive for more than one hour without pain (*Id.* at 13) and has not been able to ride a bicycle (*Id.* at 15). As part of her response to Defendant's motion, Plaintiff submitted an affidavit in which she states she cannot lift heavy groceries like bags of water softener salt, animal food and ice and cannot walk more than two blocks without pain. (Quirin Affidavit ¶¶ 23 and 24.)

The documentary evidence relied upon by Defendant, Plaintiff's disability questionnaire and deposition, establishes Plaintiff did not suffer from any substantial limitation on a major life activity, other than working, when she was terminated. Any dispute of material fact arises as the result of contradictions in Plaintiff's sworn testimony. Plaintiff's affidavit does not create a genuine issue of a material fact as it fails to identify when Plaintiff began to suffer the limitations she identifies. Even if it did, in light of her deposition testimony cited by Defendant and her disability questionnaire, Plaintiff has not offered any explanation for the obvious inconsistencies in her sworn testimony. *See Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907-909 (6th Cir. 2006) (discussing the general rule that a party may not create a genuine issue of material fact to survive a motion for summary judgment by contradicting its own earlier sworn statements without providing some sort of explanation for the contradiction). Plaintiff has not offered any explanation for the obvious inconsistencies within her deposition or the inconsistencies in her deposition and the disability questionnaire.

### B. Major Life Activity of Working

Defendant asserts Plaintiff is not precluded from a broad range of jobs and therefore cannot

establish her major life activity of working has been impaired. Plaintiff responds her lifting restriction precludes her from most jobs with Defendant as well as most jobs in her geographic area.

In order to be substantially limited in the major life activity of working, a plaintiff must establish she is unable to work a broad class of jobs. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) *superceded by statute* ADA Amendments Act of 2008, Pub. Law No. 110-325, 122 Stat. 3353. The EEOC regulations offer some insight as to how the major life activity of working might be substantially limited.

> (3) With respect to the major life activity of working - -
> (i) The terms substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
> (ii) In addition to the factors listed in paragraph (j)(2)[4] of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
> > (A) The geographic area to which the individual has reasonable access;
> > (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified, because of the impairment (class of jobs); and/or
> > (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills and abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

---

[4] Subsection (j)(2) offers three factors to consider when determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration and expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R § 1630.2(j)(2).

29 C.F.R. § 1630.2(j)(3).  Thus, when determining whether a plaintiff is precluded from a sufficient number of jobs, courts compare a plaintiff's "access to jobs with the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic area." *Mahon*, 295 F.3d 591; *Burns*, 222 F.3d at 253-254.  In doing so, courts must focus on the class of jobs from which the plaintiff is disqualified, and not the class of jobs that the plaintiff can perform. *McKay v. Toyota Motor Mfg., U.S.A.*, 110 F.3d 369, 372 (6th Cir. 1997).  Finally, the inquiry must be an individualized one so that the plaintiff's physical condition must be considered in light of her occupation, education, and range of qualifications.  *Burns*, 222 F.3d at 253 (citing *Sutton* 527 U.S. at 483).  Whether an impairment substantially limits the major life activity at issue is ordinarily a question of fact.  *See Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) (considering "whether plaintiff has presented evidence to create a question of fact in the issue of whether her bladder condition, including the bladder infections, substantially limits one of her major life activities"); *Knapp v. City of Columbus*, 192 F.App'x 323, 329 (6th Cir. 2006) (affirming the district court decision dismissing plaintiffs' claims "because none of the Plaintiffs has introduced evidence creating a triable issue of fact on the question of whether they are substantially limited in the major life activity of learning").

Defendant argues a weight restriction alone does not constitute a substantial limitation on the major life activity of working.  *See McKay*, 110 F.3d at 373 (holding the plaintiff's physical restrictions on performing repetitive motion, frequent moving and lifting more than ten pounds do not significantly restrict her ability to perform the class of manufacturing jobs at issue, rather the restrictions disqualify her only from a narrow range of assembly line jobs); *Banks v. Brown-Forman Corp.*, 84 F.App'x 625, 626 (6th Cir. 2003) (holding, under Sixth Circuit precedent, a thirty-five

11

pound lifting restriction precludes only a narrow range of work and does not constitute a disability and citing *McKay*). Plaintiff identifies several factors she argues establish her lifting restriction constitutes a substantial limitation on her major life activity of working. First, the restriction is both severe and permanent. Second, she only had a high school education (Quirin Deposition at 27) at the time of her termination, which disqualified her for many jobs. Third, she is precluded from a broad category of jobs because of her lifting restriction. In support of this third assertion, Plaintiff alleges, in the three previous production jobs she had with Abbott she had to lift more than thirty pounds. (Quirin Affidavit ¶ 15.) When she has looked for other jobs at Abbott, all have required lifting more than thirty pounds.[5] (*Id.* ¶ 16.) When she has looked for similar jobs in her area over the years, all have required at least medium lifting. (*Id.* ¶ 10.) Finally, Plaintiff requests this Court take judicial notice of the demographics of her geographic area.

Plaintiff has failed to establish there exists a genuine issue of material fact on the issue whether she is precluded from a sufficient number of jobs. Plaintiff bears the burden of establishing a *prima facie* case. Plaintiff has provided her own testimony that she was unable to find work, with Defendant, compatible with her lifting restriction. Plaintiff has provided testimony from Ms. Gay that Plaintiff was not eligible for one particular job with Defendant because that job involved lifting.

---

[5]In support for this claim, Plaintiff cites her own affidavit and portions of the depositions of Ms. Kristin Gay and Ms. Tracy Nielson-Trine. Ms. Gay recalled one discussion with Plaintiff after Plaintiff stopped working in which Plaintiff asked about a job with Defendant in material control. (Gay Deposition at 48-49.) Ms. Gay testified the job required lifting more than 30 pounds . (*Id.* at 49.) Ms. Nielson-Trine was the human resources manager for Defendant's plant in Sturgis, Michigan. (Nielson-Trine Deposition at 19.) Ms. Nielson-Trine testified, after Plaintiff stopped working, Plaintiff came to the plant to check the internal computer system to see what jobs were available. (*Id.* at 157-158.) In the portion of Ms. Nielson-Trine's deposition referenced by Plaintiff, Ms. Nielson-Trine does not discuss whether any of the jobs available required lifting.

This testimony does not establish Plaintiff is precluded from a broad class of jobs, only that Plaintiff could not find work with Defendant that was consistent with her lifting restrictions. Plaintiff's evidence regarding the broad class of jobs, other than jobs with Defendant, is insufficient to carry her burden. Plaintiff's statement in her affidavit in this regard is vague, general and conclusory and lacks any specificity. "All of the other unskilled manual labor jobs I have ever worked in and looked for before I worked for Abbott Laboratories had a lifting requirement of in excess of 30 pounds." (Quirin Affidavit ¶ 10.) Furthermore, the statement does not indicate that Plaintiff was precluded from a broad class of jobs when she was terminated in 2006. Rather, the statement indicates what sort of jobs Plaintiff could find before she began work for Defendant in 1993.

This Court declines to take judicial notice of the facts requested by Plaintiff. Judicial notice is governed by FED. R. EVID. 201. A court may take judicial notice of an adjudicative fact only if it is "not subject to reasonable dispute" and is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Plaintiff alleges St. Joseph County, Michigan, is "generally a rural area with some industrial labor production facilities, most notably Abbott Laboratories and American Axle in Three Rivers. There is also the RV industry in Northern Indiana." (Plaintiff's Response at 8.) Even accepting Plaintiff's general description of industry in St. Joseph County, that fact does not establish Plaintiff would be disqualified from a substantial number of jobs for which a comparable person without a lifting restriction would be qualified. Plaintiff has not alleged or established that the employers she identifies represent the majority of jobs offered in the area. Plaintiff next asserts, "[t]hese are all industries that will presumably require at least medium to heavy lifting for their unskilled manual

production jobs." (*Id.*)  This assertion by Plaintiff is the sort of fact of which other courts have declined to take judicial notice. *See Mossoian v. DaimlerChrysler Corp.*, 259 F.App'x 743, 747 n. 4 (6th Cir. 2008) (per curiam) (noting the district court did not take judicial notice of the availability of jobs at DaimlerChrysler which the plaintiff could perform with his work restrictions); *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 795 n. 2 (9th Cir. 2001) (declining to take judicial notice that the appellant's work restrictions would substantially impair any person from working many clerical jobs because taking notice would undermine the plaintiff's burden, under Ninth Circuit precedent, to present specific evidence about the relevant labor market in order to defeat a motion for summary judgment); *York v. AT&T, Co.*, 95 F.3d 948, 959 (10th Cir. 1996) (affirming the district court's decision not to take judicial notice of the number of women in Oklahoma City who would qualify for the defendant's two-year experience requirement because, among other reasons, the fact was not readily known and would not be readily determinable).  *But c.f., Harris v. H&W Contracting Co.*, 102 F.3d 516, 522 (11th Cir. 1997) (taking judicial notice that Grave's disease, without treatment by medication, was capable of substantially limiting major life activities).

  C.  Regarded As Disabled

  Plaintiff asserts she can establish Defendant regarded her as disabled and therefore can establish the first prong of her *prima facie* case under the ADA.  Defendant admits it believed Plaintiff could not lift more than 30 pounds.  (Plaintiff's Brief in Support at 12.)

  As an alternative to establishing that she has a disability, a plaintiff may establish the first prong of her *prima facie* case under the ADA by showing her employer regarded her as having a disability.  42 U.S.C. § 12102(2); *Ross v. Campbell Soup, Co.*, 237 F.3d 701, 706 (6th Cir. 2001).  This portion of the ADA protects individuals who are able to perform a job, but are rejected because

of the fears and stereotypes often associated with disabilities. *Sutton*, 527 U.S. at 489-490; *Mahon*, 295 F.3d at 592. Under this theory, a plaintiff establishes the first prong by showing either (1) her employer mistakenly believes she has a physical impairment substantially limiting a major life activity or (2) her employer mistakenly believes an actual nonlimiting impairment substantially limits a major life activity. *Id.* (quoting *Sutton*, 527 U.S. at 489). "Thus, an individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Id.* The Sixth Circuit has instructed courts that the issue under a "regarded as" theory of the case turns on the employer's state of mind. *Sajar Plastics*, 544 F.3d at 704 (quoting *Ross*, 237 F.3d at 709). To succeed under this theory, a plaintiff must establish her employer held some *mistaken* belief about her. *Gruener v. Ohio Casualty Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (emphasis in original); *Mahon*, 295 F.3d at 592 (emphasis in original).

Plaintiff has not established Defendant held any mistaken belief about her. Plaintiff's brief on this point does not clearly identify what mistaken belief Defendant holds. Neither does Plaintiff clearly identify which of the two "regarded as" theories applies. The evidence presented does not establish any factual dispute sufficient to defeat summary judgment under the first "regarded as" theory. For medical reasons, Plaintiff was restricted from lifting more than 30 pounds. Defendant's belief that Plaintiff could not lift more than 30 pounds is not mistaken and therefore Plaintiff cannot proceed under the first "regarded as" theory. Neither can Plaintiff proceed under the second "regarded as" theory. Plaintiff would have to argue her lifting restriction was actually a nonlimiting impairment. To the contrary, Plaintiff's lifting restriction actually restricts her from lifting more than

30 pounds.

Plaintiff's attempt to compare her situation to that of the plaintiff in *Ross* is unpersuasive. The plaintiff in *Ross* was terminated for a deficient job performance.  237 F.3d at 703-705.  The Sixth Circuit held the plaintiff presented sufficient evidence to create a genuine issue of material fact that his company regarded him as disabled.  *Id.* at 706.  Specifically, the court pointed to memos discussing the plaintiff's back injuries which identified the plaintiff referenced him as a "back case," and included a comment asking "when can we bring this problem person to a termination status?" *Id.* at 707.  The memo and other evidence, when combined with evidence that the plaintiff was otherwise qualified to perform his job, led the court to conclude a reasonable jury could find the company created a pretextual reason to terminate the plaintiff.  *Id.* at 708.  The court noted evidence did not support the defendant's assertion that the plaintiff was not qualified for his job.  *Id.*  Unlike the plaintiff in *Ross*, there is no dispute here why Plaintiff was terminated; she was medically restricted from lifting more than 30 pounds.

IV. CONCLUSION

Defendant Abbott Laboratories is entitled to summary judgment.  Plaintiff has not established she is disabled, as that term is defined by the ADA.  Plaintiff has not demonstrated she had a substantial impairment in the major life activity when she was terminated in 2006.  Plaintiff has not demonstrated she is precluded from a broad range of jobs in her geographic area as the result of her lifting restriction.  Finally, Plaintiff has not established Defendant held any mistaken beliefs about her such that Defendant regarded her as disabled.  Because Plaintiff has not established she is disabled under the ADA, this Court need not determine whether she was a qualified individual under the ADA.

## ORDER

Defendant Abbott Laboratories' motion (Dkt. No. 32) for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**


Date: May 22, 2009               /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 Chief United States District Judge